UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

CLARENCE W. SAMUELS, III          :          CIVIL ACTION NO. 2:13-cv-1978

VERSUS                            :          JUDGE TRIMBLE

TERRY TERRELL ET AL               :          MAGISTRATE JUDGE KAY

REPORT AND RECOMMENDATION

Before the court is a Motion for Summary Judgement filed on December 24, 2014 by co-defendants Jerry Goodwin and Walter Toliver, employees of the David Wade Correctional Center (DWCC) in Claiborne Parish, Louisiana, who seek dismissal of plaintiff's claims against them. Doc. 26 The motion is opposed by the plaintiff Clarence W. Samuels, III, (hereafter "plaintiff") a former inmate of the DWCC, whose opposition was filed on January 15, 2015, and is styled as a "Cross-Motion for Summary Judgment." Doc. 28  For the reasons set forth below, we recommend that the defendants' motion be **GRANTED** and the plaintiff's cross-motion be **DENIED** as moot.

## I.
### FACTUAL STATEMENT & PROCEDURAL HISTORY

### A.  The 2011 Suit

In January, 2011, this plaintiff filed a suit for damages under 42 U.S.C. § 1983 in the Shreveport Division of this court raising Eighth Amendment claims for his alleged exposure to environmentatl tobacco smoke  (ETS) at DWCC since August of 2009. He claimed that his alleged exposure to ETS occurred despite complaints to prison officials and a non-smoking

policy in place at the time. *Samuels v. Arnold*, No. 5: 11-cv-00201 at Doc. 1, pp. 3-4.  Named as defendants in that case were Assistant Warden James Arnold and Deputy Warden Angela Huff. *Id.* at Doc. 1.

In September of 2011 plaintiff was transferred to Forcht-Wade Correctional Center ("FWCC") where he first encountered Walter Toliver (co-defendant in the instant case) who was working as a guard there. In March of 2012, while still at FWCC, plaintiff filed a motion to supplement his complaint in order to add Toliver as a defendant to the pending suit in Shreveport. The proposed amendment rose claims against Toliver that were nearly identical to those alleged against Arnold and Huff in the original complaint. *Id.* at Doc. 20.  Because the allegations against Toliver related to events at FWCC and plaintiff's initial complaint dealt with occurrences at DWCC, Magistrate Judge Hornsby denied the plaintiff's motion to supplement stating that "[p]laintiff must file a new lawsuit, if he wishes to raise claims at a different institution." *Id.* at Doc. 21.

Plaintiff appealed the ruling to the district court asserting that FWCC is merely a subdivision of DWCC, "a satelite [*sic*] facility…governed by the same smoking policies…" Both FWCC and DWCC, he argued, are part of the "David Wade System" and together, "form one prison complex with one Warden—Jerry Goodwin." *Id*. at Doc 25, p. 1. He attached evidence to his appeal suggesting such a link between DWCC and FWCC, *Id.* at Doc.  25, att. 1, pp. 1-3, but the district court upheld Magistrate Judge Hornsby's ruling finding that

> While these both are prison facilities maintained by the Louisiana Department of Safety and Corrections, they are staffed by different guards and medical personnel, have different mission statements, and are plainly located in different areas of the state. This means that the Plaintiff is now surrounded by entirely different people than those whom he encountered at David Wade, the facility whose unfavorable smoking conditions prompted the initial complaint… That Forcht Wade may technically be a "division" of David Wade, or that both

facilities fall under the broad Department of Corrections umbrella does not change facts.

*Id*. at Doc. 27, p. 2.

In the record of the suit now before us, plaintiff avers that his exposure to ETS at FWCC ceased on June 18, 2012. Doc. 1, att.1, p. 12 (instant suit record).  This is confirmed by the record in *Samuels v. Arnold*, which indicates that plaintiff was transferred from FWCC on or about that date and spent time in two other prison facilities before eventually being returned to DWCC in January, 2013. See *Samuels v. Arnold*, No. 5: 11-cv-00201 at Docs. 38, 79.[1]

Also at DWCC by the time plaintiff returned there, was Toliver, who had assumed work at DWCC on May 22, 20012 having apparently left his employment at FWCC sometime before. Doc. 26, att. 11, p. 1 (instant suit record).

*Samuels v. Arnold* proceeded to trial where on August 21, 2014 a jury rendered a verdict in favor of the defendants. The court therefore dismissed the plaintiff's claims with prejudice. No. 5: 11-cv-00201 at Doc. 152.

### B.  The Present Suit

Plaintiff filed the instant suit pursuant to §1983 on June 18, 2013. The complaint alleges that during his incarceration at DWCC between January and April, 2013 he was exposed to excessive levels of ETS in violation of his rights under the Eighth Amendment despite there being a non-smoking policy in place at DWCC. Doc. 1, pp. 4-5.[2]  Initially, allegations made in the complaint were confined only to events occurring at DWCC, but an attachment filed with the original complaint made additional allegations of ETS exposure at FWCC, the same allegations

---

[1] *See* also No. 5:11-cv-00201 at Doc. [un-numbered clerk's entry on 10/05/12 noting change of address]

[2] The complaint also raises ETS Eighth Amendment claims against employees of the Allen Correctional Center (ACC). However, those claims are not relevant here as the moving defendants are not affiliated with ACC. Moving defendants are employees at DWCC.

that the court in the earlier case had refused to hear.  On August 19, 2014, we granted a request by the plaintiff to incorporate those additional allegations into the complaint. Doc. 19, p. 1.

Thus, the complaint now raises two separate alleged ETS exposures:  (1) exposure at FWCC between September, 2011 and June, 2012 and (2) exposure at DWCC between January and April, 2013. From the best information given to us it appears as though defendant Jerry Goodwin was head warden of both facilities during both time periods that plaintiff was incarcerated in each. Similarly, Walter Toliver's periods of employment as a guard, first at FWCC and then at DWCC, appear to have coincided with the plaintiff's incarcerations in each facility with the result that plaintiff was allegedly exposed to ETS by the same two defendants at two different institutions over two different periods of time.

### C.  Motion for Summary Judgment

Defendants Goodwin and Toliver filed this motion for summary judgment seeking dismissal of the plaintiff's claims against them. They contend that the plaintiff has not established that he was exposed to unreasonably excessive levels of ETS or that the defendants acted with deliberate indifference, both necessary elements of an Eight Amendment claim for exposure to ETS (see discussion below). Doc. 26, att. 2, pp. 10-12; Doc. 30, pp. 6-8.[3]  Attached to their motion are affidavits from Goodwin and Toliver and a copy of Posted Policy #021, a smoking policy claimed to be in place at "all units of the Department of Public Safety and Corrections" in order to comport with the provisions of the Louisiana Smoke Free Air Act. *See* Doc. 26, att. 4, pp. 10-11. In all submissions, the defendants refer only to DWCC. They do not address the FWCC claims in any respect.

---

[3] Defendants also raise in the alternative arguments that they are entitled to qualified immunity and that the plaintiff's claims are barred by *res judicata* since his earlier suit was decided on the merits by court of competent jurisdiction in favor of two defendants allegedly in privity with those before us now. However, because we find that plaintiff has not sufficiently established defendants' "deliberate indifference" in exposing him to ETS at DWCC (*see* discussion *infra*), consideration of those issues is unnecessary and we decline to adress them.

In opposition, the plaintiff denies the defendants' assertionhs and reiterates the arguments made in his complaint. He cites a report from the Surgeon General declaring that there is "NO risk-free level of exposure to secondhand smoke," and claims that the defendants had actual knowledge of the smoking policy and of his medical conditions, yet still exposed him to ETS by not providing him with a "smoke-free" environment. Doc. 28, p. 3-4. Furthermore, he cites this court's ruling in *Hicks v. Corrections Corp. of America,* 2009 WL 2969768 (W.D. La. 2009) wherein we relied on that report to support a finding of the "excessive exposure" element necessary to successfully establish a viable ETS claim. Doc. 28, p. 4.  Accordingly, he contends that he has sufficiently established that he was exposed to an excessive amount of ETS and that the defendants acted with deliberate indifference in exposing him to the harm caused by said ETS. *Id.*

Attached to his opposition are numerous declarations[4] from fellow DWCC inmates who attest to the fact (1) that despite the smoking policy supposedly in place at DWCC, they are constantly exposed to ETS and (2) that complaints made to prison officials are either ineffective or ignored altogether. Doc. 28, att. 1, pp. 6-14. Plaintiff also provides numerous forms of medical documentation confirming his asthma diagnosis and other medical conditions. *Id.* pp. 17-19.

## II.
### BURDEN FOR MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any

---

[4] Defendants also raise in the alternative arguments that they are entitled to qualified immunity and that the plaintiff's claims are barred by *res judicata* since his earlier suit was decided on the merits by court of competent jurisdiction in favor of two defendants allegedly in privity with those before us now. However, because we find that plaintiff has not sufficiently established defendants' "deliberate indifference" in exposing him to ETS at DWCC (*see* discussion *infra*), consideration of those issues is unneccessary and we decline to adress them.

material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ. P. 56(c). A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir.1999).  As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Vera v. Tue,* 73 F.3d 604, 607 (5th Cir.1996).

Once the movant makes this showing, the burden then shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.*

### III.
### LAW & ANALYSIS

The Eight Amendment of the United States Constitution prohibits infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition, "made applicable to the States by the Fourteenth Amendment, proscribes more than physically barbarous punishments," *Hutto v. Finney*, 437 U.S. 678, 685 (1978) (internal quotations omitted), it extends as well to unsafe conditions of confinement. *Rhodes v. Chapman*, 452 U.S. 337, 352 (1981).

In order to state a colorable claim under the Eighth Amendment, an inmate must allege acts or omissions "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *see also id.* at 105 ("Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."). As announced by the Fifth Circuit, this requires that an inmate "would have to establish 'first, that the deprivation alleged was sufficiently serious (*i.e.,* an official's act or omission must have resulted in the denial of the minimal civilized measure of life's necessities); and second, that the prison official possessed a sufficiently culpable state of mind.'" *Burleson v. Texas Dep't of Criminal Justice,* 393 F.3d 577, 589 (5th Cir. 2004) (quoting *Herman v. Holiday,* 238 F.3d 660, 664 (5th Cir. 2001)).

In *Helling v. McKinney,* the Supreme Court held that prison officials may violate the Eighth Amendment's prohibition against cruel and unusual punishment by exposing inmates to excessive levels of ETS. *Helling v. McKinney*, 509 U.S. 25 (1993). The Court set forth a two-part test, involving an objective and a subjective element, to determine whether exposure to ETS violates a prisoner's Eighth-Amendment rights. *Id.* at 33–35. Those elements will be analyzed as to the plaintiff's claims.

### 1. Objective Element

Under the objective element of *Helling*, the plaintiff "must show that he himself is being exposed to unreasonably high levels of ETS." 509 U.S. at 35. While this requires him to put forward scientific and statistical evidence to support his claim that his exposure to ETS was unreasonable, a court's determination

> requires more than a scientific and statistical inquiry into the seriousness
> of the potential harm and the likelihood that such injury to health will
> actually be caused by exposure to ETS. It also requires a court to assess
> whether society considers the risk that [a] prisoner complains of to be so

grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk.

*Id.* at 36 (emphasis in original).

A situation similar to the instant case was presented to this court in *Hicks v. Corrections Corp. of America,* 2009 WL 2969768 (W.D. La. 2009).  In *Hicks*, a prisoner incarcerated in the Winn Correctional Center (hereafter, "WCC") filed a § 1983 suit against a number of WCC guards and officials, alleging an aggravation of preexisting bronchial asthma and high blood pressure conditions due to contact with ETS.  *Id.* at *2, *8.  The plaintiff in *Hicks* was placed in a "smoking tier" for ten months, and subsequently transferred to a "fake non-smoking tier." *Id.* at *2. The plaintiff claimed that, although smoking was technically not allowed in the "non-smoking tier," WCC officials did not "screen the smoking habits of inmates before placing them on the 'non-smoking tiers,' [did] not monitor the 'non-smoking tiers' for smoking, search for cigarettes, or do anything if an inmate is seen smoking, and that several inmates on those tiers smoke 24 hours a day." *Id.*

Looking to the objective element, the *Hicks* court adopted the scientific evidence in the Surgeon General's Report finding "no safe level of or exposure to second hand smoke . . . as meeting the objective component of *Helling,* as well as the requirement of a showing that society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.  *Id.* at *6; *see also Sivori v. Epps,* 2009 WL 799463 at *7 (S.D. Miss. 2009) (using the Surgeon General's Report to satisfy the plaintiff's burden of proof in a similar case).  Applying the heightened standard as adopted vis-à-vis the Surgeon General's Report, the *Hicks* court concluded that evidence of prolonged exposure to ETS would suffice to satisfy the objective element.  *Hicks*, 2009 WL 2969768 at *6 (citing *Murrell v. Chandler,* 277 Fed. App'x 341 (5th Cir. 2008); *Murrell v. Casterline,* 307 Fed. App'x 778 (5th Cir. 2008);

*White v. King*, 2008 WL 5272092 (S.D. Miss. 2008); *Wansley v. King*, 2008 WL 4066711 (S.D. Miss. 2008); *Ware v. Batson*, 2008 WL 2773604 (W.D. La. 2008)).

Here, in addition to his own allegations the plaintiff has submitted declarations from several other inmates at DWCC to the effect that they have routinely been exposed to ETS multiple times per day. Doc. 28, att. 1, pp. 6-13.[5] Although the level of ETS that the plaintiff was exposed to at DWCC is disputed, the defendants do not deny that, at some point, he was exposed to at least some level of ETS Doc. 26, att. 2, pp.6-7.  Because the Surgeon General's report cited by plaintiff and relied upon by this court in *Hicks* concludes that there is "no safe level of or exposure to second hand smoke,"[6] it appears that almost any unwanted exposure to ETS would be enough to satisfy the objective element.  *Accord*, *Murrell v. Chandler,* 109 Fed. App'x 700, 701 (5th Cir. 2004) (holding that a prisoner can state an Eighth Amendment claim if he is exposed to ETS even where the ETS had not already harmed him).  Accordingly, considering the evidence presented herein and the similarities to the *Hicks* case, the undersigned concludes that plaintiff has met his burden of proof as to the objective element of *Helling*.

### 2. Subjective Element

As to the subjective element of *Helling*, the Supreme Court has established that only "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle,* 429 U.S. at 104; *see also Wilson v. Seiter,* 501 U.S. 294, 303 (1991) (holding that "it is appropriate to apply the 'deliberate indifference' standard articulated in *Estelle*" to suits involving "inhuman conditions of confinement, failure to attend [a prisoner's] medical needs, or a combination of both . . . .").  Applied specifically to ETS, a plaintiff may state a cause of action

---

[5] These declarations do not comport with the requirements of F.R.C.P. art. 56(4) but rather appear to be pre-printed forms containing a series of questions regarding ETS exposure at DWCC and blank lines where inmates provide written responses. We will nonetheless consider them given plaintiff is a *pro se* status.

[6] As the court did in *Hicks*, the undersigned hereby takes judicial notice of the conclusions of the Surgeon General's Report pursuant to Federal Rule of Evidence 201.

under the Eighth Amendment when prison officials "have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." *Helling,* 429 U.S. at 35.  The existence of deliberate indifference to a prisoner can be inferred from the fact that the risk of harm is obvious or that a prison engaged in conduct that would clearly evidence a wanton disregard for prisoners' serious medical needs.  *Hicks,* 2009 WL 2969768, at *7 (citing *Hope v. Pelzer,* 536 U.S. 730, 737–38 (2002); *Easter v. Powell,* 467 F.3d 459, 464 (5th Cir. 2006)).  Courts should consider the following factors in evaluating deliberate indifference to ETS: "the adoption of a smoking policy; the administration of that policy; and 'the *realities* of prison administration.'"  *Callicutt v. Anderson,* 48 Fed. App'x 916, 916 (5th Cir. 2002) (emphasis in original) (quoting *Helling,* 509 U.S. at 36–37).

Here the plaintiff does not dispute the presence nor even the enforcement of DWCC's smoking policy but merely suggests that it was inadequate to protect him against exposure to ETS because it only prohibited indoor smoking rather than prohibiting *all* smoking within the facility. Doc. 28, p. 5.  Accordingly, plaintiff argues, the defendants' failure to provide him with a "smoke-free" and "tobacco-free" environment clearly indicates their subjective deliberate indifference to his medical needs. Doc. 1, p. 5.

Defendants argue that Posted Policy #021 was and continues to be enforced with significant effect. In support, they have submitted their own affidavits as well as one from DWCC Executive Staff Officer Tommy Garrett attesting to such enforcement. Doc. 26, atts. 10-11; Doc. 30, att. 1.  In addition they have provided documentation indicating disciplinary actions taken for approximately sixty-six violations of the policy at DWCC from January through April of 2013, the exact period during which the plaintiff was incarcerated there. Doc. 30, att. 1, pp. 3-68.  Accordingly, defendants assert that their efforts at DWCC have been diligent and their

active enforcement of Posted Policy #021 clearly indicates that they have not acted with "deliberate indifference." Doc. 30, p. 7.

Even with the facts viewed in a light most favorable to the plaintiff, we agree with defendants. Plaintiff has conceded the existence of the smoking policy. He has not alleged that it was not enforced, but merely that it was not adequate to suit his needs. None of the other inmates whose declarations he submits deny the existence or enforcement of the smoking policy at DWCC, and, in fact, at least three clearly indicate that they were only exposed to ETS while outside, a further indication that the policy was in full effect during plaintiff's incarceration there. Doc. 28, att.1, pp. 6, 9, 13.  Although evidence of a smoking policy does not categorically overcome an ETS-exposure claim, in light of the evidence submitted to us by both parties in this case, we do not find that the plaintiff has sufficiently established that the defendants acted with deliberate indifference in exposing him to ETS at DWCC.

Accordingly, we find that the defendants are entitled to summary judgment as to the plaintiff's claims of ETS exposure at DWCC.

## IV.
### CONCLUSION

Accordingly, and for the reasons stated above, **IT IS RECOMMENDED** that the Defendants' Motion for Summary Judgment be **GRANTED** on the claims addressed.[7]

Finally, as we previously indicated, our review of the plaintiff's "Cross-Motion for Summary Judgment" reveals that it is a motion for summary judgment in name only, and is more

---

[7] As we indicated above in our statement of the facts of this case, plaintiff's complaint also raises ETS exposure allegations with respect to FWCC. The Shreveport Division denied his attempt to raise these issues in his 2011 suit indicating that "[p]laintiff must file a new suit if he wishes to raise claims at a different institution." *Samuels v. Arnold*, No. 5: 11-cv-00201, Doc. 27. He has filed that suit here and we specifically allowed him to include the FWCC allegations. While defendants herein purport to seek summary judgment on "all claims," [Doc. 26, p. 1], their submissions to us relate only to plaintiff's DWCC allegations and do not specifically address FWCC in any way.  Accordingly the FWCC issues remain.

properly styled an opposition to the defendants' motion now at bar. Plaintiff's cross motion is therefore **DENIED** as moot.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429-30 (5th Cir. 1996).

THUS DONE this 28th  day of April, 2015.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE